# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,     :
     Plaintiff,     :
                    :          CIVIL ACTION NO.
     v.     :          1:14-CR-0268-SCJ
                    :
MARCUS BARNES,     :
     Defendant.     :

## ORDER

This matter is before the Court for consideration of the Report and Recommendation (R&R), [Doc. 87], in which the Magistrate Judge recommends denying Defendant's two motions to suppress evidence, [Docs. 24, 25]. As Defendant has filed his objections, [Doc. 93], this Court has performed a *de novo* review of those portions of the R&R to which Defendant objects.

## Background

Because the Magistrate Judge recounted the factual background of this matter in great detail, this Court will only summarize those facts as relevant to the issues presented in the R&R and Defendant's objections. So summarizing, police officials suspected that Defendant was involved in narcotics trafficking, and they began an investigation. That investigation included fairly heavy surveillance of Defendant and others who were seen in close proximity to Defendant when police suspected that narcotics transactions had occurred. Police noticed that, while following Defendant

in his car, Defendant would frequently make evasive maneuvers designed to reveal if anyone was attempting to follow him.

In one instance, an individual named Spencer left a home in which Defendant was present and at which police suspected a drug transaction had taken place. Police pulled Spencer over and arrested him upon discovering that he had narcotics in his car. At Defendant's suppression hearing, a police officer testified that Spencer told the police after his arrest that Defendant was involved in drug dealing. Spencer also testified at the hearing and disputed the police officer's testimony, claiming that he told the police that Defendant was not at all involved in dealing drugs.

Sometime later, a police officer named Viar, a uniformed officer who operates with a dog capable of detecting narcotics, received a radio message to attempt to stop Defendant for a traffic violation. Officer Viar testified at Defendant's suppression hearing as follows: he followed Defendant for a period and, through pacing, determined that Defendant was driving 50 miles per hour on a road where the speed limit was 40. Officer Viar pulled Defendant over, told Defendant that he was speeding, and asked Defendant for his license. After running a check, Officer Viar learned that Defendant was on probation. Officer Viar asked Defendant why he was on probation, and Defendant told him he had once had a drug problem. Officer Viar asked Defendant if he had drugs in the car, and Defendant denied having drugs.

2

Officer Viar then asked Defendant if he could search Defendant's car, and Defendant consented. Using his drug dog, Officer Viar found a kilogram of cocaine and a gun in a hidden compartment in the car. He then arrested Defendant.

Defendant testified that he was not speeding because he knew that there was a police officer behind him, that he checked his speedometer repeatedly while he was driving and he was driving under 40 miles per hour, and that he could not speed because traffic was fairly heavy at the time. Defendant further testified that Officer Viar did not request his permission to search his car and that he did not consent to a search. Defendant also presented the testimony of a former police officer and expert on traffic enforcement who testified that the stretch of road where Officer Viar pulled Defendant over was not a proper roadway on which to conduct "pacing" as a method for determining a car's speed.

After Defendant's arrest, a police detective named George applied for a search warrant for Defendant's home. George's affidavit in support of the warrant application recited (1) the fact that a confidential informant had told police that Defendant's home was a place where drugs were stored and sold, (2) the fact that Spencer had stated that Defendant had dealt drugs and (3) the fact that Defendant had been arrested with drugs in his car.

3

In his motions, Defendant contends that the evidence found by police in the search of his home and car must be suppressed because it was collected in violation of the Fourth Amendment.  According to Defendant, (1) his traffic stop was not supported by reasonable suspicion or probable cause, (2) even if the traffic stop was lawful, it was unnecessarily prolonged, (3) he never consented to the search of his vehicle, and (4) even if he did consent to the search, it was not valid as the product of an illegal stop and not voluntary.  Regarding the search of his residence, Defendant argues that because the statements in the search warrant application about what Spencer told police are false and because Defendant's arrest occurred after an improper traffic stop and illegal search, the search warrant was invalid as having been approved based on false and misleading information.

## Discussion[1]

As noted above, the Magistrate Judge concluded that Defendant's motions to suppress should be denied.  After careful review of the record, this Court agrees.  The resolution to the dispute regarding whether the evidence here at issue should be suppressed is based entirely on credibility determinations between the police officers

---

[1] This Court concludes that the legal discussion in the R&R setting forth the legal standard for evaluating motions to suppress is correct and hereby adopts that discussion as its own.

4

who testified at the suppression hearing and the witnesses that Defendant presented, including Defendant himself.

The Magistrate Judge found Officer Viar's testimony that Defendant was speeding to be more credible than Defendant's testimony that he was not. [Doc. 87 at 24 & n.24]. Likewise, the Magistrate Judge found "that Officer Viar credibly testified on direct and cross-examination that [Defendant] voluntarily consented to the search of his vehicle." [Id. at 32]. Further, the Magistrate Judge found that the police officer who testified that Spencer told him that Defendant had dealt drugs to be more credible than Spencer's testimony to the contrary. [Id. at 42].

This Court must afford substantial deference to the Magistrate Judge's credibility determinations. United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012). "[I]n evaluating the factual version of events between the law enforcement officers and [a criminal defendant], we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'" United States v. Ramirez–Chilel, 289 F.3d 744, 749 (11th Cir. 2002); see also United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010) (reviewing courts should not reevaluate credibility determinations or pass upon the weight of the evidence); United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997) (court should disturb a

magistrate judge's determinations about a witness's credibility only if the court has a definite and firm conviction that those determinations were wrong).

In his objections, Defendant first attacks the Magistrate Judge's conclusion that Officer Viar had probable cause to pull Defendant over based on his argument that Officer Viar's testimony was "inherently unbelievable." Defendant bases this contention on: (1) the fact that the traffic stop occurred during "rush hour," and traffic at the time was heavy, precluding Defendant from speeding, (2) the undisputed fact that Defendant knew Officer Viar was following him, and (3) Defendant's expert testimony that the roadway where Officer Viar pulled Defendant over was not amenable to pacing to determine speed.

In response, this Court notes that none of these facts necessarily render Officer Viar's testimony unbelievable. Regarding Defendant's argument that he could not have been speeding because of the traffic, it is a matter of common knowledge of which the Court takes judicial notice, that the presence of "heavy traffic" does not always prevent drivers from speeding.

Moreover, if Defendant knew that he was being followed by the police, common sense might indicate that he not speed, but that does not preclude him from speeding. Again, it is common knowledge that the police generally do not pull over drivers who are driving just over the speed limit, and Officer Viar *estimated* that

6

Defendant was driving only ten miles per hour over the speed limit. This Court stresses that the propriety of Officer Viar's traffic stop does not depend on whether Defendant was actually speeding. Rather, the relevant question is whether it was reasonable for Officer Viar to believe that Defendant was speeding. See United States v. Chanthasouxat, 342 F.3d 1271, 1277-79 (11th Cir. 2003). As Plaintiff's expert testified, that section of road was not a good place to attempt pacing, and it is possible for Officer Viar to entirely botch the job of pacing Defendant's car yet nonetheless reasonably believe that Defendant was speeding. This Court thus concludes that neither the fact that Defendant knew he was being followed by police nor the expert testimony regarding pacing render Officer Viar's testimony so unconvincing as to overcome the deference accorded to the Magistrate Judge's credibility determination.

Defendant next argues that the Magistrate Judge ignores certain evidence in favor of other evidence. Specifically, Defendant decries the fact that the Magistrate Judge failed to give due consideration to impeaching evidence regarding Officer Viar and evidence that a police sergeant had made statements that the police would pull Defendant over no matter what, while the Magistrate Judge permitted testimony regarding instances in which Officer Viar was unable to establish probable cause to initiate a traffic stop. This Court, however, remains convinced of the Magistrate Judge's ability to accord evidence the weight it deserves, and none of Defendant's

7

arguments have undermined this Court's confidence in the credibility determinations made in the R&R.

As to Defendant's arguments regarding Officer Viar's search of his vehicle, the Magistrate Judge's determination that Defendant had consented to the search was nothing more than a credibility determination between competing versions of events, and Defendant has failed to present evidence or argument sufficient to call that determination into question. This Court is further unconvinced by Defendant's arguments regarding the scope of the traffic stop and his contention that Officer Viar had "abandoned the mission of the traffic stop" before he sought consent for the search. There simply is no instantaneous moment at which a request to search a car becomes a Fourth Amendment violation. Rather, it is a question of reasonableness, and under the facts found by the Magistrate Judge, the scope of the traffic stop and the timing of Officer Viar's request to search the vehicle were unquestionably reasonable.

With regard to Defendant's arguments about the search warrant, this Court points out that Defendant was arrested with a kilogram of cocaine in his car (indicating that Defendant is a drug dealer) and a confidential source told police that the residence was a location where drugs where stored and sold (creating a nexus between Defendant's drug dealing and the home). These facts where recited in the search warrant affidavit and they, alone, are sufficient to establish probable cause to

8

support the search warrant. As such, the dispute over what Spencer told police after he was arrested regarding Defendant's involvement in narcotics trafficking is immaterial. See United States v. Sims, 845 F.2d 1564, 1571 (11th Cir. 1988) ("Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant.").

Defendant contends that the confidential source information, mentioned above, must be excluded from the warrant affidavit because it is uncorroborated. However, the Constitution does not impose strict evidentiary standards on warrant affidavits. Specifically, "[t]here is no set requirement that officers corroborate all information underlying a search warrant." United States v. Perez, 393 F.3d 457, 462 (4th Cir. 2004). All that is required to obtain a search warrant, is that "police must establish probable cause to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gibson, 708 F.3d 1256, 1278 (11th Cir. 2013) (internal quotations omitted). Reading the affidavit in this case (even excluding the information regarding Spencer) clearly establishes that standard.

Based on the foregoing, the remainder of Defendant's objections to the R&R are immaterial.

9

## Conclusion

For the reasons discussed, it is hereby **ORDERED** that the R&R, [Doc. 87], is **ADOPTED** as the order of this Court and Defendant's two motions to suppress evidence, [Docs. 24, 25], are hereby **DENIED**.

**IT IS SO ORDERED,** this 3o+h day of _September_, 2015.

_Steve C. Jones_

STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)